May it please the Court. The question in this case is whether the ministerial exception recognized by the Supreme Court in Hosanna Tabor and Our Lady of Guadalupe and by this court in cases like Alessia Hernandez, Strelinsky, and Tomek applies to hostile work environment claims. And the answer to that question is yes. As this court held in Alessia and as the Tenth Circuit has hold in Skrzipcek, the ministerial exception applies to all employment discrimination claims because employment discrimination claims by their very nature touch upon and intrude into the relationship between a in this case there should be no exception carved out to the ministerial exception because carving it out an exception to the exception will render it meaningless. Here the plaintiff merely repackaged his dismissed termination claims as hostile work environment claims relying on precisely the same allegations of discrimination as supported the termination claims in order to label them as hostile work environment claims. Plaintiff should not be able through clever pleading to avoid the ministerial exception which is designed to preserve the autonomy of a church to govern itself and its ministers and to allow courts to avoid entangling themselves in religious questions. The very evils that led the Supreme Court to adopt the ministerial exception as a constitutional principle in Hosanna Tabor and to reaffirm it Our Lady of Guadalupe apply with equal force to hostile work environment claims. In this case what is at issue are the words chosen by a superior minister to admonish a subordinate minister. I do have a question. This is a tough case because it's at such a high level of generality so the certified question asked whether the ministerial exception bans all claims and I am certainly willing to believe that in the overwhelming majority of cases the priests or the ministers or the pastors or whatever they may be in the churches are behaving honorably and they are trying to guide the faith formation of subordinates such as Mr. Demkovich but when you say ban all claims it makes me wonder what your answer is to some of the hypotheticals that the panel raised. You know I can imagine thinking of old cases some pretty awful hostile work environment behaviors that have gone on you know forced viewing of you know somebody exposing themselves every day or things that I devoutly believe are rare but they do happen so is it your position that that's just unreachable? It may not be unreachable Judge Wood. The inquiry really is what are the elements of the claim at issue and do they implicate the position of the Supreme Court in Hosanna-Tabor or do they require this court to intrude into the religious thicket? Right I realize that as I totally agree with you as a as a matter of broad generality but take my hypothetical which I certainly stress as a hypothetical I'm not accusing anybody of this here but if a superior member of the clergy were abusing in a sexually abusing way a junior member of the clergy by for example forcing them to look at pornography on a computer screen I don't mean touching I don't mean battery exposing themselves is that something I mean that would certainly in regular employment discrimination that would be the sort of thing that would be considered severe or pervasive it probably be both actually and so it could be reached but I but I take it your view is that this this small number of cases I hope small are simply beyond the reach of the employment discrimination statutes if we happen to be talking about clergy is that correct? The position is that those cases are beyond the reach of the employment discrimination statutes but they may not be beyond the reach of the law and it's going to depend on what is alleged and the reason for the distinction is that the employment discrimination statutes put at issue the right to employment under certain conditions that is to say the right to Mr. Demkiewicz has conceded that the church had the ability to fire him I mean we're not worried about that right uh we're not worried about the right to fire as such but as the supreme court said in the Our Lady case the right is broader than the right to fire it's the right to select supervise and comma if necessary terminate the minister the supreme court is abuse supervision but you know at this level of generality no abuse is not supervision however the problem is and as the supreme court recognized that the church has a right to supervise govern discipline admonish correct and form its ministers as as well as heavily protected and as broad as the right to select and supervise and so when a case turns on the words chosen to admonish or correct a minister the court is already in a religious thicket it's in a place it does not belong. So Mr. Gaoli are you are you telling us now that if there is physical contact for example a sexual assault that the ministerial exception would not address that problem under title 7? No what I'm saying Judge Hamilton is that in the case you just posited the law as it exists for all of us would create a cause of action irrespective of the employment relationship and we had this discussion back in the original panel discussion and I've tried to understand your answers to that question we're in the case of sexual assault I know you want to talk about pastoral counseling but we also under the the breadth of this have to worry about sexual assault or the kinds of things that Judge Wood is asking about and I think we agreed that criminal law and tort law would be applicable without any constitutional bar in those situations. I guess my question is why would the circumstances of the employment relationship be any less relevant in litigating a criminal case or a tort case to make those less constitutionally intrusive than a title 7 case? Well one answer is the elements of the claim the title 7 case the hostile work environment case asks whether the workplace is permeated with discriminatory intimidation ridicule and insult severe or pervasive enough to alter the conditions of employment and create an abusive working environment. The very nature of the claim is to scrutinize the religious workplace itself and the relationship between a minister and the minister's employer the religious body. The tort case you're positing may or may not raise first amendment issues it's first amendment that all causes of action are but not necessarily. So we leave to but why would the and why would the there be a constitutional difference between for example a senior pastor's or priest's sexual harassment of someone in Mr. Demkevich's position and harassment of non-ministerial employees of the church? Because as the supreme court has said and as courts of appeals have said this court in Young and other courts in Rayburn and McClure ministers are the lifeblood of the church they personify the church and the relationship between superiors and subordinates in the ministerial relationship are themselves protected. So when what is legally at issue is how that relationship was conducted and how that religious workplace how the work environment so to speak was managed then the court is directing the actual legal inquiry to the very thing that is prohibited whereas in the tort case if the superior clergy person thought that the best way to discipline an inferior clergy person of who was African-American was to repeatedly use the n-word to them that would be all just in a day's work for the church? Of course not your honor. I mean it would be odious and nobody would endorse that but the question is should the court be in the position of choosing which words the superior minister use to admonish the inferior minister? The panel in this case actually actually said that actually criticized the words chosen by pastor of the parish to quote express church doctrine on same-sex marriage. Clearly a court cannot scrutinize which words the pastor uses to express church doctrine on a matter of church teaching. Let's assume that Mr. Jankovich would be able to show he experienced a hostile work environment based on his disability. Is there any way that in which the church might be able to say that exposure to that hostile environment is in some way part of the job? To be clear to be clear I'm not asking whether harassment was animated by religious or secular reasons but rather whether it was to be expected in Jankovich's position as church organist that he endure this type of harassment. If disability harassment was not part of the job then why would the ministerial exception apply to the claim? Well as justice Roberts as chief justice Roberts said in Hosanna that there is no requirement for religious justification to apply the ministerial exception which would include I think your question Judge Rovner but in addition he might not the plaintiff might not have expected certain interactions to be part of his job. How a church chooses to admonish the minister is not up to the minister it's up to the church and what this case is really about is second guessing the manner in which a pastor chose to that and one doesn't have to agree with the words that the pastor used simply enough to say that the pastor was acting in the capacity of admonishing another minister about his fitness his health. You're saying for instance that you could never use the n-word but your argument greats against that it seems to me. It's a difficult word obviously to even think of being used in this kind of a context but in the Young case this court applied the ministerial exception to bar a racial discrimination claim by a United Methodist minister it happened to be a termination case with a lot of racially inflammatory allegations along with Alessia Hernandez against the Archdiocese of Chicago which among other things alleged racial discrimination. It's not that one endorses or defends the conduct it's whether the conduct itself is only actionable because of the person's status as a minister. Can I ask you a variation on the hypothetical here that I think troubles at least some of us in employment law a hostile environment can affect more than one victim. The workplace may be permeated for example for multiple employees by racism or sexism and I'm trying to imagine hope it might be rare but let's suppose racist or other sexist abusive language were directed at a subordinate minister in the presence of all other members of the courts of the church staff and this happened in in weekly meetings. The non-ministerial employees in such a case would be able to claim that their workplace was I believe they would yes based on the senior pastor's treatment of the ministerial employee so why should the non-ministerial employees be able to bring a claim yet under your rule we would bar the claim by the principal target of the hostility and I apologize for speaking over Judge Hamilton I thought I might have misunderstood something so clearly the ministerial exception only applies to ministerial employees non-ministerial employees can bring whatever claim the law entitles them to claim and whatever evidence is admissible in those cases is admissible. There is always a church autonomy principle in place under the constitution requiring courts to observe the first amendment and if that claim can be brought without running afoul of that then that's fine but what I think your claim what your question raises however is the fact it demonstrates how hostile work environment claims can actually be more intrusive into the religious environment and more violative of the first amendment at least in terms of fears of entanglement and the termination. You would agree though that the non-ministerial employees would be able to bring those claims without a constitutional bar. I certainly would agree with that but that is the difference in the case of the ministerial employees the very process of the inquiry is the violation as this court held in NLRB versus Catholic Bishop. At the seventh circuit level the Catholic that phrase which has become famous in disjurisprudence did not apply to an entanglement concern. This court used that phrase in relation to allowing teachers in Catholic schools to put at issue matters within a hierarchical church in which a bishop was the proceedings the teachers were able to upend the polity of the Catholic Church and remove the bishop from his superior position so the very process of the inquiry was the violation when the minister brings this case the very process of the inquiry is the violation when a lay person a non-ministerial employee brings this case the minister is simply evidence and the taking of that evidence happens under the law and there are manners that are constitutional and not to challenge the church environment or to upend a bishop. This case Mr. Gioli I have a version of Judge Hamilton's question but I would like you to stop thinking for a second about the terms and conditions of employment and think about the provision dealing with compensation suppose a church adopts a policy that it pays women 80 percent of what it pays men in the same job and it applies that policy uniformly to ministers and non-ministers and when challenged it says we don't have any religious reason for this policy it simply reflects our experience in the labor market we don't have to pay women as much to get people to come and work for us. I assume there's no problem at all finding that policy a violation of Title VII as applied to non-ministers. I agree with that. Since by hypothesis in this hypothetical there is no religious purpose of this policy do you think it can be applied do you think Title VII can be applied to ministers as well? No the whole point. Okay I just want to make sure you're willing to take your position to the limits your position is that Title VII as a whole does not apply to ministers even if the church concedes that there is absolutely no religious basis for its policy. That is true okay as opposed as opposed to non-minister that's our position based upon the Supreme Court's own position in Hosanna Tabor and Our Lady of Guadalupe and this court's position in Alessia Hernandez the argument is based on a principle. You're reading Hosanna Tabor pretty aggressively I think given the fact that the court said it's an employment discrimination suit brought on behalf of the minister challenging her church's decision to fire her clearly a tangible action and then they say today we hold only that the ministerial exception bars such a suit we express no view on whether the exception bars other types of suits including tort contract and so on so maybe Hosanna Tabor goes that far but the Supreme Court didn't say that and I think the the thing that's concerning me is the absolute nature of your view when it comes to in other ways control the workplace but the hypothetical you know priest who's exposing himself or sending pornography or using the n-word or some of these ghastly things that we unfortunately see in employment discrimination hostile environment cases so it's just a very robust position you're taking there. Yeah so Judge Wood I think that there's a number of limiting principles to the position we're taking. First of all the position only involves claims by ministers and nobody else that actually is a very small subset of claims brought under employment discrimination laws. Do you think so after Morrissey-Beru? It is still a small subset of of employment claims. We're being told that that lawyers and nurses and all teachers and administrative staff and so on this is a pretty broad we really don't know how broadly this reaches in terms of who is covered yet. Well we know we know what Justice Alito has said and it's based on what the person actually does and if they perform religious functions they're a ministerial employee and courts will certainly sort that out there are cases going the other way where you know the janitor has been found not to be a ministerial one limiting principle is only a certain kind of plaintiff and the other limiting principle is we are only talking about claims where the right at issue is actually the right to an employment the right to an employment as a minister under certain conditions so you shouldn't have to at your job face the kinds of horribles that you mentioned Judge Wood and nobody should have to face those horribles but it's that you shouldn't have to face those at your job. Now some of those behaviors are independently actionable and just because the plaintiff is a minister they're not going to be disqualified from bringing those claims and the criminal law is not going to be prohibited from applying just because the person happens to be a minister but where they're what's really at stake where the right being vindicated is the right to employment. The government is in no position to say that any minister is entitled to an employment as a minister under any particular set of circumstances. But I don't understand Mr. Demkevich to be asserting that. I thought that he had narrowed the claim and maybe you think this is meaningless but I thought that he had narrowed the claim to a damages claim for the harassment that he experienced during the course of his employment and that that claim expires the minute he's fired which was very shortly after his wedding and so that it really wasn't any kind of claim asserting any right to any particular duration of employment or anything. It was just it was like almost like an intentional infliction of emotional distress claim except it happens to be under the theory of hostile work environment. Well I don't believe he narrowed the claim at all. I think he broadened it very widely because by bringing it as a hostile work environment claim sure it cuts off in terms of timing but what he puts at issue are the standards that I read aloud before which are extremely intrusive and require tremendous amount of surveillance of the religious workplace including how a church chooses to run its religious workplace and in terms of an intentional infliction claim this case doesn't answer the question whether those claims could be brought. Conduct rising to intentional infliction of emotional distress can be put in front of a court or a federal court in diversity and analyzed and general church autonomy principles will tell us whether or not the claim can proceed. All that's at issue here today is whether a court can second-guess the manner in which a subordinate minister was admonished and the problem. You're asking for much much a much much broader rule Mr. Jelley. Let me if I could ask you the panel we talked about some of this in the panel discussion and in the the two opinions issued by the panel in essence about kind of institutional caution here where the courts are relatively new at dealing with these claims. Hosanna Tabor was issued only after decades of litigation involving firing and tangible actions. Hostile environment suits by ministerial employees have been permitted in the Ninth Circuit since at least 1999 with the Bollard opinion. As best I can tell they remain very rare and I wonder if there's any sign that religious liberty is less robust in the Ninth Circuit in these last 20 years since that decision than in the rest of the country. So I don't have numbers for you Judge Hamilton in terms of how many cases have been brought in the Ninth Circuit but I think I would there's two comments I would make. First one of the main evils prevented by the ministerial exception is what Rayburn and McClure recognized as the chilling effect on churches in the way in which they make decisions and interact with their ministers so as to avoid the possibility of court action of government interference and that what the appellate court what those appellate courts called the coercive effect of Title VII on churches if it was in a way that the court might not even detect or we might not even be aware of. Has the church experienced that in the Ninth Circuit? Well I don't have a way of knowing that but I but I do know that that is as a matter of principle the danger we're avoiding and the second point is that the Supreme Court in in Our Lady of Guadalupe you know used the phrase Justice Alito used the phrase select, supervise, and if necessary terminate. So there was an express recognition for protection of protection for the manner in which ministers were supervised this space in which to interact with one's own ministers free of government interference and the danger that I just referred to that is recognized in Rayburn and McClure is very hard to pick up but that interaction is something that needs to be free of a fear of government coercion because here's the alternative and this is what the plaintiff's position and I with all due respect say the panel's position puts a church in the position of it eliminates the middle and it gives us only the beginning and the end you have freedom to hire the minister and the instant you have a problem with your minister you must terminate him or risk a court second-guessing the manner in which you attempted to respect. With respect Ms. Gioli that is a wild exaggeration. Yes the only way there are the the law and the panel recognized a wide variety of tangible employment actions, transfers, demotions, assignments, not to mention counseling as means available to supervise and control. Yes I understand I understand the point you're making but let's not exaggerate it unduly. And the reason for my position is that the court actually in its opinion used the words that the pastor could have chosen a better way to express the church's teaching. That's a level of intrusion that's actually unheard of but what I guess what I'm trying to say is that the right to when I say the beginning and the end but not protect the middle what I'm saying is the incentive creative to avoid a hostile work environment claim with a troublesome minister who might require rather strong admonition is to simply terminate the minister and not even have a but that actually deprives a church of its own polity of its own doctrine of its own teaching teachings about repentance teachings about correcting sin in the eyes of a religious superior very harsh words might be needed to shake a sinner out of out of his sinful beliefs. Well a court can't really sit in judgment of those words chosen. I've gone over words like fags and bitches. I'm not here to endorse those words we condemn them but by the same token a court shouldn't be sitting in judgment of the words chosen. That's really the principle argument. Not even those words. Not even those words. Not even those words which would not cross the line into conduct actionable absent the employment laws. I'm going to with the court's permission I'm going to stop and at least reserve two minutes for a rebuttal which is what I have left. Thank you. Thank you. Mr. Franklin. Thank you Chief Judge Sykes and may it please the court. The categorical rule that the court is asking you to adopt on this certified question sweeps far more broadly than the First Amendment requires. Some of the examples that were adduced in the first part of the argument speak to that or take the example of a lay teacher at a parochial elementary school who's subjected to constant unwanted sexual advances from a colleague reports it to the school administration and they do nothing. Under the defendant's rule the employer in that case would be totally immunized from liability under federal or state law even if that teacher who probably qualifies under Morrissey Baru as a minister is performing in an exemplary fashion. There's no question of her fitness for a ministry. The ministerial exception was never meant to provide that kind of absolute shield and I think it's helpful to think about Franklin. Let me ask you a question that is in some ways the reverse of the question I asked Mr. Gioldi. We are not bound by the two parties extreme positions. We can craft our own and I wonder whether it doesn't make sense to craft a position that depends on whether the church has a religious justification for what it does. The panel reported, this is page nine of the slip opinion, that it's undisputed in this case that the church had reasons based in religious doctrine for the things it said or that the minister said to Mr. Demkevich and on that assumption don't we have a problem with civil liability? Three points on that if I may, Judge Easterbrook. First as to the certified question, many harassment cases will have nothing to do with religious motivation. That's why I'm asking you to depart from the party's extreme position. The certified question presents the question that is the judgment and we can answer it in ways other than the ways the district court has tried to That's why I'm asking the question the way I did. Right, I mean ours is a case-by-case approach on the certified question so I don't think it's extreme but to touch on your question, if a church believes that a particular act of or pattern of harassment and abuse in the workplace is a matter of religious faith or doctrine it can certainly assert that as a defense. I think it's not enough to say in general terms the way they've done here. I ask my question in a particular way. The panel said at page nine that the parties agreed that what Reverend Duda said was motivated by his religious beliefs. This is not, if the parties have agreed on this, this is not a matter that's going to be tried. Well the ministerial exception, Judge Easterbrook, belongs to the church as an institution. So it's our position that the church, as defended here, has a burden to come forward and say that these acts, these allegedly unlawful acts, were responsive to some issue of religious faith or doctrine. Once they do that, which they haven't done here, what they've said is we believe in hierarchical supervision. We don't think that same-sex marriage should occur. I think that's not enough. Instead, the church should say that the acts alleged were religiously motivated. And once that assertion is made, then the court's role is very limited. So isn't that actually what they're saying? I mean certainly the district judge thought that the whole package of Mr. Demkiewicz's claims that related to discrimination based or, you know, hostile environment based on sex or sexual orientation were off the table because they did stem from sincere religious convictions or religious convictions of any type that the Catholic church holds. So the district judge got rid of those claims based on this ministerial exception. What that left was the disability claims. And there the question is, was the language, was the activity or the language motivated by some religious purpose or maybe he just didn't like people who were too heavy or, you know, those claims are a little bit harder to look at. But following up on Judge Easterbrook's question, if the church asserts that everything is religiously motivated, would that be conclusive? I think if the church asserts that the course of conduct was religiously motivated, not just that it touched on topics that the church has a viewpoint on, but rather that the course of role. It can only determine whether that assertion is, as this court put it in Tomek, subterfuge or a sham, right? Which is consistent with the general view under the religion clauses that sincerity, you know, can be inquired into, but not the truth of the matter. Mr. Franklin, how does the court allow that to occur without engaging in the entanglement issues that are present, either procedural or substantive? It's one thing to have limited discovery into this issue of what a person does to determine whether or not that person is a minister. But it's far broader to allow discovery for purposes of the way a church has its disciplinary environment. And I'm trying to think from the perspective of district courts here, having to deal with not just the scope of Rule 26, which of course is broader than admissible evidence, but also the motion practice, the discovery practice that's going to exist if the water finds its natural level and all these claims move from termination or hiring claims over to hostile work environment claims. Then we're in this position of tiered or plateaued motion practice and discovery. Doesn't that put the district courts in a terribly difficult position? I don't think so, Judge Brennan. As you mentioned, first of all, there already is a threshold question about whether the individual is a minister. And that's something that courts have been able to manage sensitively. Our position here is that the only question would be, is the assertion of religious motivation being made essentially in good faith or is it a sham, right? And district courts, I think, can manage that sensitively. They have lots of tools for avoiding excessive entanglement. They can modify the extent of discovery under Rule 16b3. They can issue orders sequencing discovery, as the Supreme Court called for in the qualified immunity context in Crawford L versus Britain. They can issue orders on motions in limine. They should certainly be careful about how they instruct juries in cases that make it to trial. To make sure that they don't ask or answer religious questions, as this court said in the Herx case in a related context. Courts in the Ninth Circuit have experience in this kind of case management, as Judge Hamilton was saying, for two decades now. As do courts around the country in areas, very sensitive areas, like qualified immunity or sovereign immunity or state secrets doctrine. So I do think that there are certainly ways that courts can accomplish that. But if I can come back to Mr. Gioli's, I think, central assertion, which is that all employment discrimination claims, including hostile environment claims, touch on and involve the church-minister relationship. I think that just misunderstands employment discrimination law. The reason that tangible employment actions like hiring and firing trigger the ministerial exception is because hiring and firing and other tangible acts are the church's official answer to an inherently religious question, which is who gets to communicate the faith. But creating a hostile work environment is different. The court has made this very clear, the Supreme Court, that intangible actions, by definition, are not treated automatically as the harassment. A coworker harassment, for example, is actionable under circumstances where the employer is negligent. A supervisor harassment, the court has said in the Ellerth case, is conduct outside of the scope of employment. It's not undertaken, it's not actuated by an intent to further the interests of the principal. Now, it can be ascribed to the employer under different agency principles. The idea that the supervisor was aided in the accomplishment of the tort by the agency relation, but only subject to, if it's an intangible act, an affirmative defense. I think there's a lot of clues there about how, when you've got a right, like the ministerial exception that belongs to the church as an institution, and you've got this architecture of employment discrimination law that definitionally distinguishes between tangible and intangible actions for the precise purpose of locating which actions belong to the church, in this case, the employer, the institution, as such. You can see that tangible actions map quite neatly onto the functions and purposes of the ministerial exception, whereas hostile environment claims, if they are intangible in nature, simply don't. So I think it's wrong to say that they implicate the church-minister relationship. For example, a disabled cantor at a synagogue who repeatedly has her wheelchair taken away by co-workers who are mocking her for her disability, she takes it to the synagogue administration, they do nothing about it. It's hard for me to see how that claim has anything to do with the synagogue's management of that member of the clergy. And one could multiply the cases. Here are the facts of a real case from the Northern District of California. A female teacher at an all-boys Catholic school, high school, member of the campus ministry, probably a minister under Maura Sieberwood, finds out that students are taking upskirt photos of her, and the school, she alleges, does nothing about it. Again, I don't see how that case implicates the church-minister relationship in any way. I'm sorry. Mr. Franklin, the vicarious, the tangible-intangible distinction that you relied upon, this is obviously imported from the Ninth Circuit. The Supreme Court had that opportunity in Hosanna-Tabor to adopt it. It did not. It strikes me that this tangible-intangible distinction goes to a concern of vicarious liability. That's a different topic than determining the scope of a constitutional protection like a ministerial exception. You say they map onto each other, but aren't we talking about an apple and an orange? Well, first of all, I would respectively disagree that the court in Hosanna-Tabor had the opportunity to deal with this distinction. That case, and both of the cases in Maura Sieberwood and the Beale case, were termination cases. So any statement about intangible actions would have been pure dicta. That's why I went back and counted in Hosanna-Tabor, there are 11 references to selection and one stray reference to selection and control. So it is dicta. But I don't think it's apples and oranges at all because, again, the right here, or if you think about it on the other side, what the government is precluded from doing under the ministerial exception is to substitute its own judgments on religious matters for those of the religious institution. And so on this certified question, the defendants have the burden of showing that in each and every case of hostile environment claims that are intangible in nature, that's what the government would be doing, substituting its view for that of the religious institution. It's important, I think, also to remember that the ministerial exercise in statutory interpretation, this is not constitutional avoidance. Judge Wilkinson is very clear about this in Rayburn, right? The defendants are asking you to invalidate federal and state statutes across a wide range of applications. I mean, there's a facial challenge quality to what they're doing here. And that should be done only when the Constitution requires it, only when they can carry their burden of showing that the intrusion on the institution's prerogatives from a religious point of view are present in every case. So, Mr. Franklin, I just want to say, I mean, as I understand their position, it's really a little bit of what Judge Brennan was talking about, that we can articulate this as you're saying. We all know, you certainly know, that it's pretty easy to throw a complaint into the hopper and have it allege, let's say, you know, a hostile work environment. A great number of them fail because they don't meet the criteria for one reason or the other. But there's a process in the meantime, and I understand Mr. Gioli to be saying that the scope of what the Supreme Court has been talking about, and Hosanna Tabor, and maybe Morris Ebreu, and some other, well, those are the two key cases, is that it's a little bit like an immunity claim. It's the Church just doesn't have to face these things, even if there's some hideous abuse going on in a certain case. So, two points on that, Judge Wood. First, I do think it's premature in the context of this certified question, which is a matter of first impression for the court, notwithstanding the claims about Alessia Hernandez, which was a very different case, to opine on this question in a way that cuts off, as a blanket matter, all possible hostile environment. So, that's the first thing I would say. I just don't think we have the experience to draw from to make that kind of predictive judgment. But the second thing I would say is if you walk through the elements of a hostile environment claim, I think you'll find that the claims of inevitable religious entanglement, excessive religious entanglement, are really overblown. I mean, the plaintiff has to show that the course of conduct was unwelcome, hard to see a religious issue there. The plaintiff has to show that it was severe or pervasive enough to alter the terms and conditions of employment. That can certainly be shown in many, many cases without trenching on any religious questions. Now, there could be an issue on the element that asks whether the conduct was undertaken because of a protective characteristic, as opposed to other reasons. And that's why we say that the defendant should have an opportunity, case by case, to say this was religiously motivated conduct. It's a statutory defense, I think, first and foremost. Actually, Mr. Franklin, if I could interrupt. It's a constitutional defense. It's not a statutory defense. And the Constitution comes before the statute. And so in the order of battle here, we're talking about the scope of the constitutional exception to employment discrimination law. And I'd like to emphasize again a point that Judge Easterbrook raised, which is we're not bound by the certified question. We can throw that out. We have the court's order in front of us. And that brings up all issues. And we're free to do the line drawing in any way we think is consistent with Hosanna-Tabor and the Supreme Court's succession cases on the ministerial exception. And with that in mind, why isn't the better limiting principle that hostile work environment claims by and between ministers are prohibited by the ministerial exception? That a minister-on-minister harassment, such as what we have in this fact pattern, within the scope of the exception and is categorically barred, but the hypotheticals that you've been raising and that some others have been raising about a student harassing a teacher, a parent harassing a teacher, other kinds of harassment among and between non-ministers obviously aren't covered. So if the employee plaintiff is a minister who is being harassed by a non-minister, that is actionable, not covered by the ministerial exception, because it doesn't intrude on the ministerial relationship. The whole point behind the exception is that courts can't intrude upon the ministerial relationship between the church and its ministers. And here we have two ministers, the pastor and the choral organist minister. And why isn't that a better limiting principle? That's the right way to draw the line consistently with the exception. So Chief Judge Sykes, I would still say that it's important to remember that the ministerial exception belongs to the church. It belongs to the religious institution. So the question is, will the hostile environment claim inevitably result in the court being called upon to substitute its judgment on religious matters for that of the church? And I just don't think the case has been made that even with respect to minister-on-minister harassment, as you propose, that that's going to necessarily be true. I don't think it's true in this case, in fact. And the reference, with apologies, to a statutory defense was meant only to suggest that where possible, on a case-by-case basis, a court should prefer to dispose of the case on statutory rather than constitutional grounds. And this is just an Ashwander principle, right? And that if you look at the ADA claim, the ADA says religious employers are permitted to require that applicants and employees conform to the religious tenets of the organization. So if the employer can assert in good faith that by creating a hostile and abusive workplace, the supervising pastor was merely calling upon the employee to conform to the organization's religious tenets, then that case could be disposed of on statutory grounds. But I have to interrupt once more. The constitutional defense, the ministerial defense under the First Amendment religion clauses, doesn't require a religious justification. That's very clear from Hosanna-Tabor. And that's another one of the lines that you suggested drawing, that there must be a proffer of a religious justification. But Hosanna-Tabor says that's not an element of the defense. In fact, it protects the relationship. It doesn't protect just religious justifications. We don't want courts intruding into this relationship and substituting their judgments for ecclesiastical judgments sort of categorically. We don't evaluate the validity of the, or even the sincerity of the religious justification. That's for a different class of First Amendment pre-exercise cases. So let me be clear about our position. It's true that where the ministerial exception applies, the reasons for the defendant's action simply don't matter. So if you're talking about hiring and firing as the paradigmatic case, it doesn't matter if the employer has a religious reason, asserts one, doesn't have one, doesn't assert one. That's all out the window. That's where it doesn't apply. As we submit, it doesn't apply to hostile work environment claims. Then you're in a case-by-case situation. Right, but you can't use the proffer of a religious justification as the decisive question about whether the exception applies or it doesn't apply. The exception provides a zone of protection around churches and their ministers and that asks for a religious justification before the exception applies. That can't be the line drawing point. Well, our position is that the ministerial exception leaves room for the assertion of an as-applied First Amendment defense on a case-by-case basis, even in cases where it does not categorically apply. To speak to your broader question, I don't think it's quite accurate to say that the ministerial exception protects the relationship. What it does is it bars the state from asking or answering questions of religious faith, doctrine, or church governance. Okay. Actually, it's a little broader than that. It applies to bar the state, civil courts in particular, from questioning the motivations of the church with respect to its conduct regarding its ministers. That's why tort and contract claims are probably accepted, or at least the Supreme Court and Hosanna Tabor withheld judgment on that because tort and contract claims don't require an inquiry into motive. Other than was this act intentionally done, but not the motive behind it. The protection is broader than what you're articulating, I think. Well, if the exception protects all aspects of the church-minister relationship, then it's hard for me to make sense of Mr. Gioli's concession that tort claims, for example, are permitted. A tort claim like a slip and fall, that doesn't require an inquiry into the church's motives. It's just a slip and fall. Neither do many hostile environment claims. I'm sorry? This raises an interesting question that was posed in the Constitutional Scholars' amicus brief about the scope of tort law and the assertion that it was based on objective conduct. I would have thought, Mr. Franklin, that there's an entire category of intentional torts where the defendant's state of mind is central. Absolutely. That's true of, for example, intentional infliction of emotional distress claims. There's an instructive decision by the Sixth Circuit in a case called Ogle, where they permitted an IAD claim to go forward, notwithstanding the related ecclesiastical immunity defense, because in the view of the Sixth Circuit, that case could be decided without inevitably engaging religious questions. And I think the same thing is true of many hostile environment claims. The elements of the hostile environment claim do not inevitably place in issue the religious motivation or not of the defendant. The defendant is free to place that in issue, and our view is once that happens, the court's role is very limited. It's simply to determine whether the assertion is essentially being made in good faith. And if it is, then the case has to be terminated, even if it's an intangible claim. But I think placing that modest burden on the defendant is a small price to pay in order to make sure that this whole range of claims that Congress deemed to be independently actionable, because they vindicate interests in psychic well-being, in emotional health, individual dignity that are not adequately protected by the rest of Title VII, or by tort law for that matter, that one would invalidate all such claims as a blanket matter in order to protect a relationship between church and minister that simply isn't going to be implicated in every such case. But Mr. Franklin, the idea of good faith gets to motivation. It gets to the intent of how the church is raising this religious doctrine issue. And how is that not involving district courts in assessing the validity of a religious concept between minister to minister? Well, again, I think it's no different in principle from the kind of limited inquiry that courts perform at the threshold stage of determining whether an individual is a minister, it's no different from the limited inquiry into sincerity that courts have made clear is permissible in cases ever since the United States versus Seeger in the 1960s on establishment clause grounds. So it's a modest and deferential inquiry, but it's one that serves to delimit those cases that truly deserve to be protected by the exception or by the First from those that don't. I think it's also important to stress that defendants, religious employers already have ample incentives to have mechanisms of prevention and correction in place for cases that are brought by non-ministerial employees or cases that are entanglement here with respect to inquiring into the elements of the Affirmative Defense. You know, is there or is there not an adequate corrective mechanism in place? The church would be well advised to have those mechanisms in place, adequate training, mechanisms for complaint that are promptly dealt with because claims can be brought and sometimes are brought by non-ministerial employees or by congregants. So again, Mr. Gioli's argument about the church's incentives I think is somewhat overdrawn because those incentives are already in place. If the court has no further questions, we would urge you to answer the certified question in the Thank you very much. Mr. Gioli, you had two minutes. As Chief Judge Sykes recognized, the ministerial exception creates a zone of protection around the relationship between a church and a minister and excludes a secular court from that zone. Chief Justice Roberts recognized this in Hosanna-Tabor and in the lengthy recitation of First Amendment law from which he derived the ministerial exception, I think tied it very closely to the reasoning of Milošević, where the court said that the very subject matter of the dispute is the reason that the court was unable to adjudicate the case, not whether the issue at issue was explicitly religious. In Milošević, the issue was the actual issue, according to the indictment, because that's what the church constitution said. And quite clearly, the archbishop had not been tried within a year. And what the Supreme Court said was that the fallacy fatal to the Illinois Supreme Court's reasoning was that it thought it could substitute its judgment for that of the Serbian Orthodox Church on whether a certain person was the archbishop versus another. The subject matter of the dispute was the key. The reason Hosanna-Tabor is clear, and Our Lady of Guadalupe reemphasizes that there is no need for a religious justification or an identifiable religious issue in a ministerial exception case, indeed, that it would violate the constitution to require one, is that the exception exists not only to avoid entanglement under the establishment clause, but also to protect a church's right under the free exercise clause to self-government. And that includes how to manage, discipline, communicate with, admonish, form, speak to its own ministers. And this case strikes at the heart of that protection. As the panel observed, perhaps there would be protection if only the pastor had been nicer about communicating church doctrine on same-sex marriage to this particular minister. There is no And the Archbishop of Chicago and one of his priests, or a seminarian, and the interference constituted by the rule advocated by the plaintiff in this case would go so deep and be so intrusive into the actual polity of this church or any church that it demonstrates the need for a prophylactic rule. If I have one more... Can I just make sure, I want to make sure I understand from your earlier discussion, it is your contention that the exception would apply even in cases of physical assault within the scope of the appointment? No, it's not my position. The position of the defendant in this case is that there's no constitutional protection for physical assaults, period. Within, even if it's offered, for example, if it's a superior minister sexually assaulting an inferior minister? That case involves an obvious battery, involves the criminal law, and maybe other claims. Would that be actionable under Title VII? We're saying it would not be actionable under Title VII, but it would be actionable. Okay, thank you. All right, thank you very much, Mr. Giuli. Thank you, Mr. Franklin. Thanks to both counsel for very helpful oral arguments this morning. We'll take the case under advisement and the court is in recess. Thank you, Your Honor. Thank you.